Filed 8/1/13  P. v. Lopez CA2/6
Opinion following rehearing

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SERGIO JOSE LOPEZ,<br><br>    Defendant and Respondent. | 2d Crim. No. B241532<br>(Super. Ct. No. KA095567)<br>(Los Angeles County)<br>ON REHEARING |

The grant of a defendant's motion to dismiss on double jeopardy principles terminates the People's case.  Where, as here, the trial court grants a new trial based on its independent assessment of the evidence pursuant to *People v. Robarge* (1953) 41 Cal.2d 628, and Penal Code section 1181, subdivision (6),[1] there is simply no authority upon which such motion can be made or granted.  Any trial court contemplating terminating the People's case on double jeopardy principles should welcome the opportunity to pause and reflect before making a ruling.  Here, the trial court did so without the benefit of a written motion or written opposition.

---

[1] All statutory references are to the Penal Code.  Section 1181, subdivision (6) is hereafter referred to as section 1181(6).

1

The People appeal from the trial court's order granting a new trial on the charge of attempting to dissuade a witness as alleged in count 7. (§ 136.1, subd. (a)(2).)[2] They also appeal from the trial court's subsequent order dismissing this charge and the accompanying "on bail" enhancement. (§ 12022.1.)[3] The dismissal was predicated on the theory that retrial is barred by double jeopardy principles.

A jury acquitted respondent on counts 1, 2, 3, and 6. It returned guilty verdicts on counts 7 and 8. It was unable to reach a verdict on count 4, which was dismissed. For the misdemeanor offense of willful disobedience of a court order (count 8), respondent was sentenced to 241 days in county jail. He was given credit for 241 days of presentence confinement.

For the charge of attempting to dissuade a witness (count 7), the trial court granted a new trial on the ground that the verdict was contrary to the evidence. (§ 1181(6).) We affirm this order but reverse the trial court's subsequent order dismissing count 7 because it was based on an erroneous application of double jeopardy principles.

*Facts and Procedural History*

Respondent, a practicing attorney, was Sirena Zavala's boyfriend. They lived in Zavala's house. On September 16, 2011, Deputy Aaron Scheller interviewed Sirena Zavala. Zavala stated as follows: During an argument with respondent the previous day, she asked him to move out. Respondent grabbed Zavala by the throat and started choking her. Zavala said that she would stay with respondent, and he "let go." Zavala walked into the bedroom and sat on the bed. She was crying. Respondent asked her "if they were okay." Zavala responded that "they were not okay." Respondent "pulled her head

---

[2] In addition to count 7, the information alleged that respondent had committed the following offenses: assault with a firearm (count 1); threatening to commit a crime that will result in death or great bodily injury (count 2); false imprisonment by violence (count 3); corporal injury to a cohabitant (count 4); discharge of a firearm in a grossly negligent manner (count 6); and willful disobedience of a court order, a misdemeanor (count 8). The information did not include a count 5.

[3] Appellant agreed to a bifurcated court trail on the "on bail" enhancement. (§ 12022.1.) The court trial did not occur because the court dismissed count 7.

2

out of her elbows where she was crying and brandished a silver handgun revolver in his right hand." Respondent said, "I told you if you were ever going to leave me, I will shoot you and shoot myself." Respondent inserted a single bullet into the revolver's cylinder. He cocked the revolver and put the muzzle against his temple. Zavala pleaded with him not to fire the weapon. Respondent repeatedly pointed the revolver at her and then at himself. When respondent pointed the gun at Zavala, it was only inches from her head. Respondent fired the revolver. The bullet struck the bed's headboard and mattress. Zavala said that she was not going to leave respondent, and he put the weapon down. Zavala walked out of the bedroom and told respondent that she was going to take a break. Respondent replied, "[Y]ou're not going anywhere." Zavala felt "an object hit her in the buttocks." Respondent had thrown a candle at her. Respondent grabbed her by the shoulders, pulled her back into the bedroom, and threw her onto the bed. For several minutes, he hit her with his fists in the face, body, arms, and legs. Respondent stopped hitting her when she said that her children were going to be home soon from school.

Respondent's Porsche was parked at Zavala's house. Deputy Scheller searched the vehicle and found a revolver that was registered to respondent. The revolver's cylinder contained one expended cartridge and no live rounds.

Under Zavala's bed, Deputy Scheller found a bullet fragment. There was a bullet hole in a bed sheet. Zavala gave Scheller a bullet fragment that she had found underneath the hole in the sheet. Scheller saw "an impact mark on the wood of the headboard."

A felony complaint was filed against respondent. On September 20, 2011, he was arraigned on the complaint. The court issued a restraining order requiring him to not have any contact with Zavala. A preliminary hearing was set for October 26, 2011.

Deputy Greg Salcido was assigned to investigate the case. On September 21, 2011, he met Zavala at her house, but she refused to talk to him. Thereafter, Deputy Salcido went to Zavala's house four or five times to serve her with a subpoena for the preliminary hearing, but he was unable to locate her. Zavala saw Salcido come to her house, but she would not open the door. Zavala did not want to be served with a subpoena.

3

Between September 25 and 29, 2011, while Salcido was trying to find Zavala, respondent and Zavala stayed in the same room at a hotel. Respondent signed the hotel receipt and paid for the room with his law office's credit card. Zavala testified that it was her idea to stay at the hotel. She explained that respondent had told her that "he couldn't see [her] because of the restraining order." Zavala had responded, " 'We'll stay at a hotel and nobody will know.' " However, Zavala later testified that she "had [respondent] help [her] not be found [by law enforcement] by staying at a hotel with him."

At trial, Zavala testified that she and respondent had a verbal argument that did not become violent. Respondent did not touch any part of her body. After the argument ended, she was in the kitchen when she heard a gunshot inside her bedroom. She went into the bedroom and saw respondent "kind of like in shock holding the gun." Respondent said, "I'm sorry, you're going to be pissed off. I just totally ruined your bed." Zavala denied telling Deputy Scheller that respondent had hurt her or had fired a gun in her presence.

*Motion for New Trial and Dismissal On Double Jeopardy Principles*

On the charge of attempting to dissuade a witness, respondent orally moved for a new trial on the ground that the verdict was contrary to the evidence. (§ 1181(6).) Defense counsel asked the court to "exercise its independent judgment of the evidence" pursuant to *People v. Robarge* (1953) 41 Cal.2d 628 (*Robarge*). Counsel argued: "[A]fter [respondent] was released from custody, he did have contact with [Zavala] and he did provide a hotel room. The clear inference in my view being that he wanted to see her, not that he wanted to prevent her from testifying or help her from not testifying. . . . And there's no evidence or insufficient evidence, I should say, from which the court can infer that he did that for the purposes required to violate [section] 136[.1, subd. (a)(2)]."

In granting the motion for new trial, the trial court stated: "I've evaluated it [the charge of attempting to dissuade a witness] in the context of *Robarge* and the cases following [*Robarge*] and exercising my independent judgment of the evidence . . . find there's insufficient evidence to support the verdict." Defense counsel said, "I'm asking the court to dismiss that count [count 7] because he's been in jeopardy on this." The court

4

replied: "You're correct. Granted. He can't be retried based on the court's ruling and finding based on insufficiency of the evidence . . . ." The court minutes state: "An oral motion of [respondent] to dismiss the charge in count 7 is granted (once in jeopardy)."

*The Trial Court Did Not Err as a Matter of*
*Law in Granting the Motion for a New Trial*

The People contend: "Because the trial court blended two different, conflicting standards of review together in ruling on the motion for a new trial . . . , the trial court erred as a matter of law when it ruled on the motion for a new trial." The two different standards are the *Robarge* standard and the standard used to determine whether the evidence is legally sufficient to support a conviction.

Pursuant to *Robarge*, "the court, on [an 1181(6)] motion for a new trial, should consider the probative force of the evidence and satisfy itself that the evidence as a whole is sufficient to sustain the verdict. [Citations.] . . . [I]t should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict. [Citations.]" (*Robarge*, *supra*, 41 Cal.2d at p. 633.) The trial court "has very broad discretion and is not bound by [the jury's resolution of] conflicts in the evidence." (***Ibid***., see also *Porter v. Superior Court* (2009) 47 Cal.4th 125, 133 ["in ruling on an 1181(6) motion for new trial," the court "independently examines all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable doubt *to the judge,* who sits, in effect, as a '13th juror' "].) On the other hand, "[f]or challenges relating to the [legal] sufficiency of the evidence, 'the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]' [Citation.]" (*People v. Lewis* (2001) 26 Cal.4th 334, 365.) The reviewing court "must not reweigh the evidence [citation], reappraise the credibility of the witnesses, or resolve factual conflicts . . . [citation]." (*People v. Pitts* (1990) 223 Cal.App.3d 606, 884.)

5

The People argue that the trial court "blended" the two standards together because the court said it was relying on *Robarge*, but then went on to state that "there's insufficient evidence to support the verdict." The People maintain that the words "insufficient evidence" show that the court found the evidence to be legally insufficient under the substantial evidence test. The People assert: "[T]he trial court's ruling that there was 'insufficient evidence' inherently conflicts with its statement that it examined the evidence under *Robarge* . . . since the two standards of review are entirely different." "[T]he trial court erred as a matter of law when it used an incorrect standard of review to grant the motion for a new trial."

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Furthermore, "[i]t is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties. [Citations.] [¶] Absent evidence to the contrary, that presumption justifies a finding in this case that the trial court" properly applied the *Robarge* standard. (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.) The use of the words "insufficient evidence" does not establish that the trial court applied the wrong standard.

" 'A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion. [Citation.]' [Citation.]" (*People v. Lewis*, *supra*, 26 Cal.4th at p. 364; *People v. Andrade* (2000) 79 Cal.App.4th 651.) The People do not contend that, under the *Robarge* standard, the trial court abused its discretion. Accordingly, we uphold the trial court's order granting a new trial on the charge of attempting to dissuade a witness.

*The Trial Court's Erroneous Jeopardy Ruling*

The trial court dismissed the charge of attempting to dissuade a witness because respondent "can't be retried based on the court's ruling and finding based on insufficiency

6

of the evidence."  This was erroneous.  "In filing a motion for new trial, [respondent] impliedly waived any double jeopardy protections he might have had under state law, just as if he had consented to a mistrial.  [Citations.]"  (*Porter v. Superior Court*, *supra*, 47 Cal.4th at p. 136.)  Our Supreme Court has "repeatedly held that an order granting a new trial under section 1181(6) is not an acquittal and does not bar retrial on double jeopardy grounds.  [Citations.]"  (*Id*., at p. 133.)  In these circumstances, "the judge acts as a 13th juror who is a 'holdout' for acquittal.  Thus, the grant of a section 1181(6) motion is the equivalent of a mistrial caused by a hung jury.  [Citation.]"  (*Ibid*.)  "Whereas a jury must *acquit* if it finds the evidence insufficient, a trial court ruling on an 1181 motion may only grant the defendant a *new trial* if it is not convinced of guilt beyond a reasonable doubt.  [Citation.]  This rule permits trial court oversight of the verdict but ensures that the People, like the defendant, have the charges resolved by a jury."  (*Ibid*.)  "[T]he law is well settled that a court reviewing the jury's verdict under section 1181 lacks the power to acquit the defendant based on the court's view of the evidence.  [Citation.]"  (*Id*., at p. 136.)

Respondent argues that the People forfeited their claim of error because they failed to object in the trial court.  "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.  [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.  [Citation.]"  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.)

The forfeiture rule is inapplicable here because the jeopardy issue presents a pure question of law and the People contend that the dismissal denied them their constitutional right to a jury trial.  "The People have a fundamental right to jury trial, secured by article I, section 16 of the California Constitution which provides that trial by jury is an inviolate right and shall be secured to all, and may be waived in a criminal case only ' "by the consent of both parties . . . ." '  [Citations.]"  (*People v. Partner* (1986) 180 Cal.App.3d 178, 182-183.)  In *In re Sheena K.* (2007) 40 Cal.4th 875, 889, our Supreme Court held that a defendant's claim that her probation condition was unconstitutionally vague and

7

overbroad on its face was not forfeited by her failure to raise it in the juvenile court. The court noted that the claim "presented a pure question of law, easily remediable on appeal by modification of the condition." (*Id*., at p. 888; see also *Bonner v. City of Santa Ana* (1996) 45 Cal.App.4th 1465, 1476-1477, and cases listed therein, disapproved on other grounds in *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 320.)

Even if the People had forfeited their claim of error, we would exercise our discretion to review it. The *Sheena K.* court declared: "[F]orfeiture of a claim not raised in the trial court by a party has not precluded review of the claim by an appellate court in the exercise of that court's discretion. [Citations.] Thus, an appellate court may review a forfeited claim—and '[w]hether or not it should do so is entrusted to its discretion.' [Citations.] [¶] The appellate courts typically have engaged in discretionary review only when a forfeited claim involves an important issue of constitutional law or a substantial right. [Citations.]" (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 887, fn. 7.) The People's claim involves important issues of constitutional law: their right to a jury trial and the applicability of double jeopardy principles. The claim "requires the review of abstract and generalized legal concepts - a task that is well suited to the role of an appellate court." (*Id*., at p. 885.)

In his petition for rehearing, respondent contends that he is entitled to present supplemental briefing on the *Sheena K.* issue because he did not have the opportunity to discuss it in his brief. The issue was raised for the first time in the People's reply brief. The People were replying to respondent's argument that they had forfeited their claim of error by failing to object when the court dismissed the case.

In support of his contention, respondent cites Government Code section 68081, which provides: "Before the Supreme Court, a court of appeal, or the appellate division of a superior court renders a decision in a proceeding other than a summary denial of a petition for an extraordinary writ, based upon an issue which was not proposed or briefed by *any party* to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing. If the court fails to afford that opportunity, a rehearing shall be ordered upon timely petition of any party." (Italics

8

added.)  This section is inapplicable because the People briefed the *Sheena K.* issue in their reply brief.  Moreover, pursuant to section 68081 " '[t]he parties need only have been given an opportunity to brief the issue decided by the court and the fact that a party does not address an issue, mode of analysis, or authority that is raised or fairly included within the issues raised does not implicate the protections of section 68081.' [Citation.]" (*Mark v. Spencer* (2008) 166 Cal.App.4th 219, 228, fn. 4.)  The *Sheena K.* issue was fairly included within the forfeiture issue raised by respondent in his brief.

*Substantial Evidence Could Support a Conviction*

*of Attempting to Dissuade a Witness*

Respondent maintains that any error by the trial court was harmless because the evidence is legally insufficient to support the conviction of attempting to dissuade a witness.  As previously discussed, the test is "whether from the evidence, including reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged [citations].' [Citations.]"  (*People v. Lines* (1975) 13 Cal.3d 500, 505.)  As we explain, the inferences that can easily be drawn against respondent are compelling.  As Presiding Justice Roth so eloquently indicated: "There is, of course, no talismanic requirement that a defendant must say 'Don't testify' or words tantamount thereto . . . ."  (*People v. Thomas* (1978) 83 Cal.App.3d 511, 514.)

Respondent acknowledges that Zavala "stayed with [him] at a hotel for four nights in September."  But he contends that the People failed "to prove [he] knew the prosecution was attempting to subpoena Zavala and that he specifically intended to help her evade service."  (Italics omitted.)  Respondent asserts, "It is simply not reasonable to believe that respondent's staying with his girlfriend for four nights in a local hotel a full month before the preliminary hearing establishes a specific intent to dissuade her from testifying at the hearing."

A reasonable trier of fact could find that respondent arranged for Zavala to stay at the hotel so that law enforcement authorities would be unable to locate her and serve her with a subpoena for the preliminary hearing.  Zavala knew that the police were trying to find her.  Deputy Salcido went to her house four or five times to serve her with a

9

subpoena. Zavala saw Salcido come to the house, but she did not open the door. It is reasonable to infer that Zavala informed respondent of these attempts to contact her. As an attorney, he should have realized that the police were trying to serve her with a subpoena for the preliminary hearing. Except for count 8 (disobedience of the restraining order), Zavala was the only witness to the events underlying the charges. Zavala testified that she "had [respondent] help [her] not be found by staying at a hotel with him." The hotel receipt was in respondent's name, and he paid for the room with his law office's credit card.

An incident that occurred on October 4, 2011, five days after respondent and Zavala had left the hotel, provides additional support for the jury's finding that respondent was complicit in Zavala's efforts to evade service of a subpoena. On that date Deputy Salcido arrested respondent while he was driving Zavala's daughter home from school. The daughter telephoned Zavala and left a message on her answering machine. Zavala sent a text message to Jessie Wong, who worked as a paralegal for respondent. The text message stated: "They arrested [respondent] again. Please call me back. They also took custody of my daughter and won't return her unless I go to the station." Wong texted back to Zavala, "Don't leave your house." Zavala texted to Wong: "Okay. I'm afraid they [the police] are tracking me." Zavala never picked up her daughter from the station. The daughter's father picked her up six hours later. Zavala admitted that she was "trying to avoid being served with a subpoena."

It is reasonable to infer that Wong told Zavala not to leave her house because Wong was concerned that Zavala would be served with a subpoena if she went to the station to pick up her daughter. Since Wong was respondent's employee, it is also reasonable to infer that Wong was acting pursuant to respondent's instructions that Zavala avoid contact with law enforcement.

We reject respondent's contention that, "even if the evidence were sufficient to show that [he intentionally] assisted Zavala in her ongoing attempt to evade service[,] he was not guilty of dissuading a witness." In *In re Holmes* (1983) 145 Cal.App.3d 934, 942, the appellate court concluded: "Advising a witness to conceal himself for the

10

purpose of avoiding service of a subpoena is in violation of Penal Code section 136.1 . . . ."  The *Holmes* court reasoned: "[O]ur Supreme Court in *People v. Carpenter* (1902) 136 Cal. 391, 393 . . . , found that a person who advised a witness, prior to trial, to conceal himself for the purpose of avoiding the service of a subpoena was guilty of Penal Code section 136, which at that time provided: 'Every person who willfully prevents or dissuades any person who is or may become a witness, from attending upon any trial, proceeding, or inquiry, authorized by law, is guilty of a misdemeanor.'  [Citation]. . . . The slight differences in language between the 1902 statute and the more recent one . . . would not seemingly change the interpretation of the statute by our Supreme Court in *Carpenter*, *supra.*"  (***Ibid***.)

### *Disposition*

The order granting a new trial on count 7 is affirmed.  The subsequent order dismissing count 7 is reversed.

NOT FOR PUBLICATION

YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

11

Tia Fisher, Judge

Superior Court County of Los Angeles

_____

Jackie Lacey, District Attorney of Los Angeles County, Phyllis Asayama, Patrick D. Moran and Scott D. Collins, Deputy District Attorneys, for Appellant.

David Andreasen, under appointment by the Court of Appeal, for Defendant and Respondent.